UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMMIE D. HERNANDEZ., | No. 2:12-cv-2150-KJN |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1]  In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from July 1, 2000, plaintiff's alleged disability onset date, through the date of the ALJ's decision. (ECF No. 16.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment. (ECF No. 23.)  Although the court granted plaintiff an extension of time to file a reply

---

[1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 7, 9.)

brief no later than January 7, 2014, no reply brief was filed. (ECF No. 25.)

For the reasons that follow, the court grants plaintiff's motion for summary judgment in part, denies the Commissioner's cross-motion for summary judgment, and remands the action for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

I. BACKGROUND

Plaintiff was born on December 11, 1975, completed the ninth grade at school and later obtained a GED, and formerly worked primarily in cashier and fast food jobs.[2] (Administrative Transcript ("AT") 58-59, 78-80, 196, 301, 327, 330-31, 351.) Around September 2005, plaintiff applied for DIB and SSI, alleging that she was unable to work as of July 1, 2000, due to bipolar disorder, manic depression, hepatitis C, liver problems, scoliosis of the back, and fatigue. (AT 78-80, 83.) After the Commissioner denied plaintiff's applications initially and on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which ultimately took place on October 16, 2007, and at which plaintiff (represented by counsel), a medical expert, and a vocational expert ("VE") testified. (AT 321-56.)

In a decision dated January 24, 2008, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from July 1, 2000, plaintiff's alleged disability onset date, through the date of the ALJ's decision. (AT 13-23.) When the Appeals Council denied plaintiff's request for review on August 13, 2008, plaintiff sought judicial review in this court, and the parties ultimately stipulated to remand the case pursuant to sentence four of 42 U.S.C. § 405(g) for purposes of obtaining further vocational expert testimony. (AT 5-7, 387-88.)

On remand, the ALJ conducted a supplemental hearing on April 26, 2010, at which plaintiff (represented by counsel) and a VE testified. (AT 423-39.) Thereafter, in a decision dated August 31, 2010, the ALJ again determined that plaintiff had not been under a disability, as defined in the Act, from July 1, 2000, plaintiff's alleged disability onset date, through the date of the ALJ's decision. (AT 370-81.) That decision became the final decision of the Commissioner

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

when the Appeals Council denied further review on June 20, 2012. (AT 357-59.) Thereafter, plaintiff filed this action in federal district court on August 17, 2012, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II. ISSUES PRESENTED

Plaintiff has raised the following issues: (1) whether the ALJ improperly rejected the opinions of the examining psychiatrists; (2) whether the ALJ erred in failing to address the statements of plaintiff's sister concerning the nature and extent of plaintiff's functional limitations; and (3) whether the ALJ erroneously assessed plaintiff's residual functional capacity and thus relied on the VE's testimony in response to an improper hypothetical question to find plaintiff not disabled.[3]

III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

////

////

////

---

[3] The third issue (an allegedly erroneous residual functional capacity assessment and hypothetical) is not truly a separate issue, but is instead derived from purported errors referenced in the first two issues.

IV. DISCUSSION

    A.    <u>Summary of the ALJ's Findings</u>[4]

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[5] As an initial matter, the ALJ found that plaintiff remained insured for purposes of DIB through September 30, 2004. (AT 372.) At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since July 1, 2000, plaintiff's alleged disability onset date. (<u>Id.</u>) At step two, the ALJ determined that plaintiff had the following severe impairments: post-traumatic stress disorder, borderline personality disorder,

---

[4] Because the ALJ's August 31, 2010 decision is the final decision of the Commissioner for purposes of the instant action, the court outlines the findings from that decision.

[5] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. <u>See</u> 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

<u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. <u>Bowen</u>, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. <u>Id.</u>

4

1  degenerative changes in the lumbar spine, and hepatitis C.  (AT 373.)  However, at step three, the

2  ALJ determined that plaintiff did not have an impairment or combination of impairments that met

3  or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id.)

4        Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity

5  ("RFC") as follows:

6  > After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to
7  > perform light work as defined in 20 CFR 404.1567(b) and
> 416.967(b) except she is limited to work involving simple repetitive
8  > tasks and instructions, limited interaction with the public and
> minimal contact with co-workers and supervisors.  She cannot
9  > perform work requiring climbing of ladders, ropes, or scaffolds, and
> can only occasionally perform postural activities such as climbing,
10 > balancing, stooping, kneeling, crouching, or crawling.

11  (AT 374.)

12        At step four, the ALJ found that plaintiff was unable to perform any past relevant work.

13  (AT 379.)  Finally, at step five, the ALJ determined, in reliance on the VE's testimony, that

14  considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in

15  significant numbers in the national economy that plaintiff could perform.  (AT 380.)  Specifically,

16  the ALJ found that plaintiff would be able to perform the following representative unskilled

17  occupations:  (1) assembler, a light work occupation with a specific vocational preparation

18  ("SVP") of 2, and with 33,708 jobs in California; (2) sorter, a sedentary work occupation with a

19  SVP of 2, and with 1,795 jobs in California; and (3) sewing machine operator, a light work

20  occupation with a SVP of 2, and with 22,000 jobs in California.  (AT 352, 380, 428-32.)

21        Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined

22  in the Act, from July 1, 2000, plaintiff's alleged disability onset date, through the date of the

23  ALJ's August 31, 2010 decision.  (AT 381.)

24        B.      Plaintiff's Substantive Challenges to the Commissioner's Determinations

25            1.      Whether the ALJ improperly rejected the opinions of the examining

26  psychiatrists

27        The record indicates that plaintiff had a troubled childhood, adolescence, and early

28  adulthood.  According to plaintiff, she was sexually molested by an older brother, and began

using alcohol and street drugs, including heroin, marijuana, cocaine, methamphetamines, and PCP. Plaintiff was put in special education classes, and was ultimately kicked out of school in the tenth grade for fighting and gang affiliation, although she later obtained a GED. She subsequently went to prison four different times, including for attempted robbery with a gun, petty theft, assault, and probation/parole violations. Plaintiff reported working intermittently from 1994 through 2002 at various unskilled jobs as a clerk, dietary aide, convalescent aid, cashier, and warehouse worker. She also received training in small engine repair and maintenance while in prison, and worked for one month in a lawn mower repair shop in 2005 before being terminated. Plaintiff participated in a residential drug treatment program until approximately November 2007, and claims to be presently clean and sober. However, she continues to complain of significant mental symptoms and functional limitations, including depression, anxiety, anger, irritability, emotional explosiveness, racing thoughts, difficulty sleeping, and an inability to get along with people. (AT 196-97, 301-02, 327, 330-38, 415-16.)[6]

Although the record in this case includes some notes related to mental health treatment that plaintiff received from psychiatrists and social workers at the Parole Outpatient Clinic, it does not contain any mental functional capacity assessments by a treating source. Plaintiff was evaluated at the request of the Commissioner by consultative examining psychiatrist Dr. Phyllis Thurstone, and was twice evaluated at plaintiff's counsel's request by examining psychiatrist Dr. Patricia White. Plaintiff contends that the ALJ improperly discounted the opinions of these examining psychiatrists.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

---

[6] As noted above, plaintiff also has certain physical impairments, which are not directly at issue in this appeal.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[7] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Consultative examining psychiatrist Dr. Phyllis Thurstone interviewed plaintiff and conducted a mental status examination at the request of the Commissioner on December 6, 2005. (AT 196-99.) Dr. Thurstone diagnosed plaintiff with probable post-traumatic stress disorder, borderline personality disorder, probable lower normal to borderline range IQ, polysubstance dependence in complete remission, and a GAF score of 40.[8] (AT 199.) Dr. Thurstone assessed

---

[7] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

[8] GAF is a scale reflecting "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000). A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." Id.

plaintiff as capable of performing simple and repetitive tasks, but not more detailed or complex tasks, and opined that her "biggest handicap is not being able to work with supervisors, coworkers, and the public." (Id.) Dr. Thurstone further stated that plaintiff "would have very much difficulty functioning in a usual competitive work world due to the multiplicity of her problems, the biggest problem of which is not getting along well around people. She has a terrible temper and gets in fights with people. She also has difficulty remembering." (Id.)

On May 30, 2006, non-examining state agency psychiatrist Dr. Glenn Ikawa reviewed plaintiff's records and issued diagnoses of a probable post-traumatic stress disorder, borderline personality disorder, and polysubstance dependence in complete remission. (AT 267-84.) Dr. Ikawa assessed moderate limitations in plaintiff's ability to understand, remember, and carry out detailed instructions; interact appropriately with the general public; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (AT 281-82.) He opined that plaintiff was able to sustain simple repetitive tasks and finish an 8-hour workday, could relate to supervisors, but would need to limit contact with coworkers and the public. (AT 283.)

Thereafter, on November 6, 2007, examining psychiatrist Dr. Patricia White interviewed plaintiff and conducted a mental status examination at the request of plaintiff's counsel. (AT 300-09.) Dr. White diagnosed plaintiff with chronic and severe post-traumatic stress disorder, severe obsessive-compulsive disorder, severe borderline personality disorder, and polysubstance abuse/dependence currently in remission. (AT 303.) She assessed plaintiff as markedly limited in her ability to understand, remember, and carry out detailed instructions/tasks; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public or customers; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to expected or unexpected changes in the work setting; and set

1    realistic goals or make plans independently of others.  (AT 305-07.)  Dr. White further opined

2    that plaintiff was the type of person for whom a routine, repetitive, simple, entry-level job would

3    serve as a stressor that would exacerbate instead of mitigate psychological symptoms in the

4    workplace, and that plaintiff would be unable to complete a workday more than three or four

5    times per month.  (AT 307-08.)

6        Dr. White subsequently reevaluated plaintiff at plaintiff's counsel's request on April 9,

7    2010.  (AT 415-22.)  Dr. White's diagnoses were largely unchanged, and she opined that plaintiff

8    was precluded from substantial gainful activity and would likely remain so impaired for a further

9    period of twelve months or more.  (AT 417.)  Dr. White assessed plaintiff as markedly limited in

10   her ability to maintain attention and concentration for extended periods; work in coordination

11   with or proximity to others without being unduly distracted by them; complete a normal workday

12   and workweek without interruptions from psychologically based symptoms, and perform at a

13   consistent pace without an unreasonable number and length of rest periods; interact appropriately

14   with the general public or customers; and get along with co-workers or peers without unduly

15   distracting them or exhibiting behavioral extremes.  (AT 418-20.)  Dr. White again stated that

16   plaintiff was the type of person for whom a routine, repetitive, simple, entry-level job would

17   serve as a stressor that would exacerbate instead of mitigate psychological symptoms in the

18   workplace, and that plaintiff would be unable to complete a workday more than three or four

19   times per month.  (AT 420-21.)

20       In evaluating the mental health opinion evidence, the ALJ rejected the opinions of the

21   examining psychiatrists, Drs. Thurstone and White, primarily on the basis that these opinions

22   were almost entirely based on plaintiff's self-reporting of symptoms and events.  (AT 376-78.)

23   The court is not persuaded, based on the present record, that the opinions can be entirely

24   discounted that easily.  Even though the ALJ's concerns are not unfounded (as discussed further

25   below), Drs. Thurstone and White are both board-certified psychiatrists who reviewed plaintiff's

26   records, personally interviewed plaintiff, and presumably used their clinical expertise to make a

27   professional judgment as to plaintiff's mental functioning.  Furthermore, although Dr. Thurstone

28   was retained by the Commissioner and Dr. White was retained by plaintiff's counsel, their

1  opinions are fairly consistent with each other.

2         The ALJ gave great weight to the opinion of non-examining state agency psychiatrist Dr. Ikawa. (AT 376-77.) However, it is well established that the opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831. As noted below, some of the observations and findings by plaintiff's treating psychiatrists and social workers at the Parole Outpatient Clinic may call into question the examining psychiatrists' severe findings, but most of the limited treatment notes available are fairly cursory, and none of plaintiff's treating sources actually provided a meaningful assessment concerning plaintiff's mental functioning limitations. (AT 285-98.) Therefore, based on the record before the court, the court cannot find that the ALJ's evaluation of the mental health opinion evidence is supported by substantial evidence.

       Nevertheless, the court also concludes that a remand for payment of benefits is not appropriate. An award of benefits is only appropriate where "no useful purpose would be served by further administrative proceedings," "the record has been thoroughly developed," and "there are no outstanding issues that must be resolved before a proper disability determination can be made." Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1399, 1401 (9th Cir. 1988).

       In this case, although plaintiff indisputably has significant mental limitations, and the examining psychiatrists' reports cannot be characterized as entirely conclusory or minimally supported, they do not provide sufficient explanation for their extreme findings, including plaintiff's supposed *complete inability* to work with supervisors, coworkers, and the public. As the ALJ noted, the examining psychiatrists' reports on their face rely heavily on plaintiff's subjective reports. (AT 376-78.) For example, Dr. Thurstone noted:

> [Plaintiff's] biggest handicap is not being able to work with supervisors, coworkers, and the public. She does not take a public bus and does not drive. The claimant would have very much difficulty functioning in a usual competitive work world due to the multiplicity of her problems, the biggest problem of which is not getting along well around people. She has a terrible temper and gets in fights with people. She also has difficulty remembering.

(AT 199.) Even though Dr. White, who reached similarly severe conclusions, extensively summarized plaintiff's background history and prior records in two seemingly thorough reports,

those reports document little, if any, clinical and psychological testing.  Instead, they largely recount plaintiff's history and subjective symptoms/complaints, which are then followed by Dr. White's diagnoses and assessed functional limitations.  (AT 300-09, 414-22.)  The examining psychiatrists' apparent heavy reliance on plaintiff's subjective complaints is especially problematic, because the ALJ found plaintiff not entirely credible, pointing to several inconsistencies in plaintiff's statements and conduct.  (AT 376-79.)

Furthermore, some of the examining psychiatrists' own findings seem to contradict their severe opinions.  For example, although Dr. Thurstone assessed plaintiff as being completely unable to work with supervisors, coworkers, and the public (AT 199), she also noted that plaintiff was living with family members with whom she seemed to "get along well"; observed that plaintiff maintained good eye contact and answered questions well; and described plaintiff's attitude and behavior as "actually very pleasant and happy.  There seems to be a good interaction."  (AT 197.)  Dr. White similarly noted that plaintiff was cooperative, attempted to answer all questions, and was "not hostile in any way."  (AT 303.)

Additionally, even though plaintiff's relatively sparse treatment records document symptoms of depression, anxiety, and post-traumatic stress, the records also suggest that plaintiff's mental health improved with appropriate medication management.  (AT 285-98.)  At times, plaintiff's treating psychiatrist at the Parole Outpatient Clinic, Dr. Appel, even described plaintiff as "psychiatrically normal" or "mentally within normal limits."  (AT 288-90, 295.)  At one of plaintiff's administrative hearings on October 16, 2007, plaintiff testified that she was no longer taking any medication, because she felt that it was "messing [her] up" in unspecified ways.  (AT 337-38.)  Significantly, neither of the examining psychiatrists analyzed the potential impact of psychiatric medications on plaintiff's mental health conditions – specifically, whether those conditions could be better controlled with medication, thereby enabling plaintiff to perform some limited range of work.

Accordingly, the court concludes that the case should be remanded for further development of the mental health opinion evidence.  In particular, if practically feasible, the ALJ should subpoena, or otherwise obtain, supplemental testimony from Drs. Thurstone and White to

further explain the bases of their severe conclusions as to plaintiff's mental functioning capacity and to address the court's concerns outlined above. Alternatively, the ALJ may obtain a supplemental consultative psychiatric evaluation of plaintiff by a different consultative psychiatrist, who should be given full access to plaintiff's prior records and assessments, and should specifically consider the potential impact of appropriate psychiatric medications and other treatment on plaintiff's mental functioning capacity.

On remand, the ALJ is also free to develop the record in other respects, if deemed appropriate. Importantly, the court expresses no opinion regarding how the evidence should ultimately be weighed upon remand within the confines of the applicable law.

### 2. Other Issues

In light of the court's conclusion that the case must be remanded for further development of the mental health opinion evidence, the court declines to reach the remaining issues. On remand, the ALJ will have an opportunity to further consider and address the lay statements of plaintiff's sister in the context of the record as a whole.

## V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is GRANTED IN PART.

2. The Commissioner's cross-motion for summary judgment (ECF No. 23) is DENIED.

3. The action is remanded for further proceedings consistent with this order pursuant to sentence four of 42 U.S.C. § 405(g).

4. Judgment is entered for plaintiff.

IT IS SO ORDERED.

Dated: February 11, 2014

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE